Loring, J.,
delivered the opinion of the Court.
The evidence shows that by articles of agreement made the 28th day of April, 1849, between Daniel Saffarans, of the first part, and the United States, hy James Collier, collector of the port of San Francisco, of the second part, it was agreed that said Saffarans should lease, and the United States should hire, a store or building in San Francisco, to be built by Saffarans on a site to be selected by the collector, and according to the specifications in the contract, for the term of fifteen years, and for an annual rent to be determined by the collector when the building should be finished and be received by him.
This agreement was approved by the Hon. W. M. Meredith, then Secretary of the Treasury, on four conditions, one of which was as follows : “ The rate of rent to be paid for the building to be agreed upon *348 by the collector, subject to the approval of the Secretary of the Treasury.” (Bee,, p. 7, Ex. 2.)
On the 17th of May, 1849, Daniel Saffarans, to obtain capital for building the store and fulfilling his contract, appointed as his attorney George N. Saunders, with full powers to negotiate a loan or loans of money with any person1 or persons in the United States or elsewhere, for the purpose of “ completing the contract aforesaid; ” and Saunders was to receive as his compensation one-sixth part of the interest of Daniel Saffarans in the agreement with the United States and its subject-matter.
Under this authority Saunders, as the attorney of Daniel Saffarans, contracted with the petitioner, by articles of agreement dated January 9, 1850, by which the latter was to advance fifty thousand dollars, to be repaid, with ten per cent, interest, in two or three annual instalments, to procure the construction of the iron warehouse and its transmission to San Francisco, to buy the land the collector might select, and superintend the erection of the store, and Daniel Saffarans was to pay one-sixth part of the cost of the building — making the whole advanced capital sixty thousand dollars.
By the 5th article of the agreements the interest in it was to be capitalized and divided into one hundred shares, of which 33|- shares were allotted to the advanced capital. Of these 27§ were to be assigned to' the petitioner for the fifty thousand dollars advanced by him, and 5f : were to be assigned to Daniel Saffarans for the ten thousand dollars to be advanced by him. The residue of the shares were reserved to Daniel Saffarans, and the evidence shows that in these B. Crittenden and others became interested. (Crittenden’s deposition.) " But as this stock' rested merely in contract between the parties to it, and was not an ownership in the real estate or in the lease of that1 to the United States, and as the evidence shows (Crittenden’s deposition) that it was finally taken up by the petitioner, it is immaterial to his claim, except as if shows at what cost he obtained the assignment of the property hereinafter exhibited.
On the 11th day of November, 1850, other articles of agreement were made between the United States, by T. Butler King, then collector of San Francisco, of the first part, and said Daniel Saffarans, of the second part, which, referring to the original agreement of 1849, and its approval, on condition, by the Secretary of the Treasury, recited that the warehouse had been built of the dimensions and quality stipulated for, and that Mr. Collier, the collector, had made a contract for the rent of two thousand dollars per month for fifteen years, of which *349 tlie Secretary of the Treasury had disapproved; and it then set forth that the United States, being in need of the building, and Mr. Saffarans being willing to make some abatement in the terms, the parties to this agreement had concluded on the terms of fifteen hundred dollars per month, for the term of ten years, from the day possession should be delivered to the collector. (Rec., p. 11, Ex. 5.)
This agreement of November 11,1850, was approved of by the Hon. Thomas Corwin, then Secretary of the Treasury, on condition “ that the collector, T. Butler King, on his arrival in San Francisco, shall first examiné the warehouse in question, and duly accept the same as being substantially of the character, description, and dimensions required by the stipulations in the former articles of agreement herein-before referred to.” (Rec., p. 12, Ex. G.)
At the time of making the agreement of 11th November, 1850, Mr. ' King had been commissioned as collector of San Francisco, and had given his official bond, and he had been sworn into his office, but in the State of New York, and not within his official district, as the law required. (Rec., p. 55.) He arrived at San Francisco early in January, 1851, and was duly sworn there on the 8th -day of January. (Rec., p. 86.) He then examined the warehouse, and accepted it “as substantially in compliance with the contract,” and he entered on its occupation as a government warehouse about the fourteenth or fifteenth of January. (Rec., p. 57.)
On the 10th day of July, 1851, Daniel Saffarans made and appended to a copy of the agreement of 11th November, 1850, the following instrument:
• “ Having sold to Alexander Cross, for a valuable consideration, all my interests hereafter mentioned, I, Daniel Saffarans, do hereby transfer and assign the agreement, of which the foregoing instrument is, in substance, a copy, with all the rights, rents, and interests accrued or to accrue under or in virtue of the same, to Alexander Cross, hereby placing him, to all intents and purposes, in my stead, as regards said agreement, as though he instead of myself had been the original party thereto, he taking all the benefits of said agreement and all its responsibilities ; and I do release, quit-claim, and convey all my right, title, interest, and lien, if any, and whatever it may be, to the said Cross and his heirs forever. The said Cross is hereby entitled and authorized to receive all the rent that has accrued and is now in arrears, or that may hereafter accrue under said agreement, for the house therein mentioned and alluded.
*350 “ In testimony whereof, I have hereunto set my hand and seal, this 10th of July, eighteen hundred, and fifty-one.
“DAN’L SAFFABANS. [seal.]
“ Signed, sealed, and acknowledged in presence of the undersigned witnesses :
“H. M. Lusher.
“ O. G-. Leonard.
“ James Bose, Jr.
“ It is agreed that this transfer will not be valid until B. H. Crittenden, Isaac Saffarans, apd A..P. Sheldon indorse on it their approval, this 10th of July, 1851.
“DAN’L SAFFABANS.”
And on this assignment were made the following indorsements :
“ State of California,
“ County of San Francisco :
“ The undersigned signify their approval to the within transfer by affixing hereto their seals and signatures, this fifteenth (15th) day of September, A. D. one thousand eight hundred and fifty-one.
“ BOB’T H. CBITTENDEN, [seal.]
“ By his attorney, . G-. W. GrUTHBIE.
“ISAAC SAFFABANS, B. [seal.]
“ Sealed and delivered in presence of—
“Ward McAllister.
“ Becorded in liber 1 ‘of Leases, pages 476 to 480, inclusive.
H.
“ The undersigned signifies his approval to the within transfer by affixing hereto his hand and seal, this twenty-sixth day of January, one thousand eight hundred and fifty-two.
“ A. P. SHELDON, [seal.]
“Per ISAAC SAFFABANS, B,

His Attorney in fact.

“ Signed, sealed, and delivered in presence of—
“ Witness: Ward McAllister.”
On the 15th September, 1851, Isaac Saffarans indorsed on the agreement of 10th November, 1851, the following order :
“ San Francisco, September 15, 1851.
“ Sir : Having assigned and transferred to Alexander Cross within *351 contract, you will please pay all back and future rents arising under tbe same to said Alexander Cross.
“I remain, very respectfully, sir, your obedient servant,
“DANIEL SAFFARANS,
“Per attorney, ISAAC SAFFARANS, B.
“ Hon. T. Butler King,
“ Collector of the Fort of San Francisco.”
And afterward Mr. King indorsed on the same agreement this declaration:
“ I, as collector of the port of San Francisco, do hereby accept the iron warehouse erected by Alexander Cross upon a part of the water lot No. 49, on Battery street, now in the occupation of the United States government as a bonded warehouse, as the warehouse contracted to be built by Daniel Saffarans, as provided in a contract of which the within is a copy. And I do hereby officially recognize said Cross as landlord, it being understood that I am to incur no individual responsibility in the premises. This acceptance to date as if done January 14, 1851.
“T. BUTLER KING-,

“ As Collector of the F,ort of San Francisco.

“ Recorded in county recorder’s office of San Francisco, September 20,1851, in liber No. 1 of Leases, pages 478, &c., at 1 o’clock p. m.
“JOHN A. McGLYNN,
“ County Recorder.
“By JAMES C. GRADY.”
The occupation of the building as a government warehouse was continued, and the rent was paid to Mr. Cross by Mr. King, and his successors in office, until the 13th of August, 1853, when the warehouse was abandoned by the United States, under, the orders of Mr. Guthrie, then Secretary of the Treasury, to Mr. Hammond, then collector at the port of San Francisco. (Ree., p. 106.)
Mr. Cross was notified of the intended abandonment of the building, and that the lease was held to be void as against the United States. He protested against the right of the Secretary to avoid the lease, and declared that he should claim payment of rent according to its terms until its expiration. (Ree., p. 106.) When the building was abandoned he took possession of it and improved it by leasing a part and employing the rest of it as a warehouse, and his receipts from these sources he credited to the United States as so much received *352 as rent from them on the lease to them, and his -present claim is for the balance of the rent which accrued after the abandonment of the store.on August 13, 1853, to the 14th November, 1856.
This claim involves the validity of the lease and the assignment.
The lease is made up of the instruments of May 8, 1849, and November 11, 1850. By the former of these the premises, the term, the hiring and .letting, and the mode of-fixing the rate of rent, and of its payment, were contracted for. By the latter-, the rate of rent and the time of its payment were fixed in the manner provided for, and by an agreement between the parties the duration of the term was modified by its reduction from fifteen years to ten. Both of these instruments were prospective, and, together; were in legal effect a contract for a lease, to begin when the building should be received by the United States; and this, by the evidence, was on the 14th of January, 1851, when Mr. Collector King examined, accepted, and entered upon the occupation of the building. Then the lease attached and was perfected, and we think, substantially and literally, according to the provisions of law, for it was made by the collector, with the approval of the Secretary of the Treasury, according to the statute of 1799, § 21. (1 U. S. L., 642.)
The agreement of May 8, 1849, was made by Collector Collier and approved by Mr. Meredith, then Secretary of the Treasury, on condition that the rate of rent to be fixed by the collector should be approved by the Secretary of the Treasury. This condition was fulfilled by the agreement of November 11, 1850, by which the rate of rent was fixed by Collector King and approved by Mr. Corwin, Secretary of the Treasury, on condition that Mr. King examined and approved the building in San Francisco, and this was done. It is true that when Mr. King made the agreement of 11th November, 1850, he had not been sworn into office, as the law required, in his official district, but he had been commissioned. as collector and given bonds as such, and been sworn in New York then; and afterwards he had been sworn'in his district, and was in all respects duly qualified as collector when he officially accepted the building, and he thereby adopted and affirmed the agreements of 1849 and 1850, and all previously done under them, and these agreements expressly referred their operation as a lease to the act of Mr. King; i. e., to the reception of the building by the collector.
The purpose of the requirement of the law of 1799, c. 22, s. 21, that the collector shall provide storehouses for the safe-keeping of goods, *353 with the approbation of the principal officer of the Treasury Department, is to assure to the United States the benefit of the collector’s local knowledge and of the supervision of the head of the Treasury Department, and the evidence shows that the local knowledge of Collector Collier was applied to the site, plan, and construction of the building and the duration of the term, and that the then Secretary of the Treasury approved his (Collier’s) acts in all these respects. The evidence also shows that Collector King, at California, examined and accepted the building at a rent approved by the then Secretary of the Treasury, Mr. Corwin, and this certainly gave to the United States the security provided by the statute. That the rent was reduced from $2,000 per month, at which Mr. Collier, with his local knowledge, fixed it, to $1,500, and the term from fifteen years to ten by Mr. King, can furnish no ground of objection to the United States, for it was for their advantage and at their request. On the grounds stated, we think the agreements of May 8, 1849, and November 11, 1850, with the action of the parties under them, constituted a valid lease of the warehouse made by the collector and approved by the Secretary for ten years, at a rent of $1,500 per month.
No reference has been made to the order signed by Isaac Saffarans, as attorney of Daniel Saffarans, to pay the rents to Mr. Cross, because the evidence shows no authority in Isaac Saffarans to make such an order.
As to the validity of the assignment, we have seen that this provision was indorsed upon it: “It is agreed that this transfer will not be valid until R. H. Crittenden, Isaac Saffarans, and A. P. Sheldon indorse on it their approval.”
On the assignment is indorsed, as we have seen, the approval of Crittenden, by his attorney, G. W. Guthrie, and his appointment is by the following power :
“New York, July 25, 1851.
“Know all men by these presents, that I, R. H. Crittenden, of Frankfort, Kentucky, do hereby nominate, constitute, and appoint George W. Guthrie, of the city of San Francisco, California, my true and lawful attorney in fact, to act for me under the foregoing joint power of attorney from Daniel Saffarans to Isaac Saffarans, A. P. Sheldon, and myself, with power of substitution, hereby authorizing the said Guthrie to exercise all the rights and powers which I myself could do under the said power of attorney from said Daniel Saffarans, binding myself to approve whatever the said Guthrie may do in the *354 premises, making his acts as binding as if done by me. Witness my hand and seal.
“R. II. CRITTENDEN, [seal.]
, “ Signed and sealed in presence of—
“George N. Sanders.
“James Eldredge.”
It is observable that this refers to the power of attorney on which it is indorsed, and authorizes Guthrie to act for Crittenden under that, and gives him no other authority whatever; and the power referred to does not authorize any action in approval of the assignment, but refers to different matters, such as the delivery of the deed of assignment, &c. It is in these words:
“Know all men by these presents, that I, Daniel Saffarans, of the town of Memphis, in the State of Tennessee, do hereby nominate, constitute, and appoint Robert H. Crittenden, Isacc Saffarans, and A. P. Sheldon my true and lawful attorneys in fact, for me and in my name to deliver to Alexander Cross, of San Francisco, in California, my assignment, to said Cross of all my right, title, and. interest in and to an iron warehouse in San Francisco, together with all rents, accrued or to accrue on the same, as are more particularly set forth in my said assignment bearing date of the 10th day of July, 1851, and attached to a certified copy of my contract of 11th November, 1850, with T. Butler King, collector of San Francisco, for the rent of said house, &c.
“And my said attorneys are also hereby fully authorized and empowered to receipt for and receive from said Cross all money, bonds, or notes stipulated to be received by me as the consideration for said assignment, and to take from said Cross a release of all responsibility on my part, arising out of any and all contracts heretofore made between us in relation to the building or renting of said house.
“And my said attorneys are also hereby fully authorized and empowered, if any objection is made to the form of my said assignment, or its mode of authentication, to alter or amend the same at their discretion, or, in fact, to make any new or other assignment for me.
“And my said attorneys are also hereby fully empowered and authorized to substitute another attorney in their places, with the same full powers in the premises as are hereby conferred on them; hereby binding and obliging myself to ratify and confirm whatever my said attorneys, or their substitute, may do in the premises, and making their acts as binding on me as if done by myself.
*355 ‘‘In testimony whereof, I have hereunto set my hand and seal this 10th day of July, 1851.
“ DANL. SAFFARANS. [l. s.]
“ Signed, sealed, and acknowledged in presence of the undersigned witnesses :
“ H. M. Lusher.
“ C. G. Leonard.
“ James Rose, Jr.
“ State of Tennessee, Shelby county, ss:
“Personally appeared before me, James Rose, a duly commissioned and sworn notary public in and for said .county, Daniel Saffarans, the constituent above named, with whom I am personally acquainted, who acknowledged the execution of the within power of attorney for the purposes therein contained.
“ Witness my hand and the impress of my seal of office at Memphis, [l. s.] in said county, July 10, 1851.
“ JAS. ROSE, Notary Public.”
By this power the appointees are authorized to do, as attorneys of Daniel Saffarans, three things : 1st. To deliver to Cross the assignment. 2d. To receive from Cross the consideration of the assignment. 3d. If the form of the assignment was objected to, to amend it or make it a new one. And then the appointees were authorized to substitute an attorney for themselves as to these three things. But those things were to be done as acts of Daniel Saffarans, and they had no reference to the approval of the assignment, which was not tobe Daniel Saffarans’s act, nor done as such under this power, but was to be the original act of the persons named, required by the provision appended to the assignment, and with which the power of attorney from Daniel Saffarans and the authority of substitution under it have nothing to do. And as Crittenden expressly substituted Guthrie for himself only under the power of attorney from Daniel Saffarans, there is no authority shown for Guthrie’s indorsement of Crittenden’s approval, and consequently no such indorsement of that on the assignment as is necessary for its formal completeness.
When this case was tried here before, it was adjudged adversely to the petitioner, on the ground that the assignment had not been approved in the form required, and it was reported to Congress. It has been heard, and is before us now under a joint resolution of Congress, approved July 2, 1864, referring the case to this court, the preamble of *356 which resolution recites that the former decision of this court was “ adverse to the prayer of the petition on the sole ground of an alleged technical defect in the assignment of said lease from Daniel Saffarans to the petitioner.” And the enacting clause of the resolution authorizes the court, “if it shall appear that the said petitioner is the equitable owner of said lease, and in justice and equity entitled to the rents (if any) due from the United States, to render judgment therefor in his favor, notwithstanding any technical defect in the assignment of said lease.”
We are of opinion that the evidence shows that the petitioner is the equitable owner of said lease, because he paid the full value of it, and that consequently he is the equitable owner of the rents due thereon from the United States; that it was the purpose of the said Daniel Saffarans to convey to said Cross the legal title of said lease and the store by the assignment above shown, and the letter of attorney to Crittenden, Isaac Saffarans, and Sheldon, and that it was the purpose of the three persons last named to indorse their approval of said assignment upon it by the indorsements shown thereon, and that the failure of said Crittenden to do so was by mistake in the form of his instrument, as is evident from his deposition; and that as this defect is in fact formal, and was reported to Congress, and is described in the joint resolution as a technical defect, we are of opinion that it is removed from the case, and that, on the grounds heretofore stated, and under the joint resolution aforesaid, the plaintiff is entitled to judgment.
The case shows the petitioner claims in this suit the gales of rent due on the lease from the 13th day of August, 1853, to the 14th day of November, 1856, 39 months, at $1,500 per month, amounting to the sum of..........................................$58,500 00
But the petitioner credits the United States with moneys received from the rent, &e., of the store ................... $15, 676 17
And claiming on this a'commission of 5 per cent............................. 783 SO
He makes the net credit........................ 14, S92 37
Which leaves the balance due.................... 43,607 63
We find nothing in the evidence that proves that Mr. Cross did not execute fairly and properly the agency he assumed for the United States in employing the store on their account, the purpose and effect *357 of whieli was the prevention of loss : and we think him entitled, on the evidence, to the commission he charges.
Mr. J. J. Coombs for claimant.
Mr. J. J. Weed, Assistant Solicitor, for the government.
It is ordered that judgment be entered for the petitioner for forty-three thousand six hundred and seven dollars and sixty-three cents.